UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GP VINCENT II,<br><br>        Plaintiff,<br><br>    v.<br><br>MAYHEW CENTER, LLC, et al.,<br><br>        Defendants. | Case No. 20-cv-00745-VC<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 43, 50 |

      Mayhew Center owned a property that was environmentally contaminated. In 2007, a neighboring property owner, Walnut Creek Manor, sued Mayhew Center in the Northern District of California under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), claiming that the contamination from Mayhew Center's property had spread to Walnut Creek Manor's property. Following a jury verdict in favor of Walnut Creek Manor, the court entered a judgment requiring Mayhew Center to clean up Walnut Creek Manor's property as well as its own property.

      In 2010—after entry of judgment in the Walnut Creek Manor case—Mayhew Center brought a separate CERCLA action in the Northern District against several defendants, seeking to recover the costs of the cleanup. Among the defendants was Norma Beard, a former owner of the Mayhew Center property. Beard and her husband had operated a business called Etch-Tek on the property during the 1970s and 1980s, and Mayhew Center contended that their activities caused the contamination.

      The parties in both the Walnut Creek Manor and Mayhew Center cases subsequently reached a global settlement. The agreement required Beard to deposit money into a fund on

behalf of herself, her husband, and Etch-Tek. The agreement also mandated that various other parties, including Mayhew Center and the Beards' insurance company, deposit money into that same fund. Mayhew Center was required to use the fund to clean up the properties.

In conjunction with the global settlement, the parties in the Walnut Creek Manor lawsuit submitted a stipulated injunction that required Mayhew Center to clean up the properties in accordance with the agreement and the prior Walnut Creek Manor judgment. The court entered the injunction in the Walnut Creek Manor case in November 2010. Thereafter, the parties in the Mayhew action submitted a stipulated dismissal with prejudice, which the court entered in July 2011.

Apparently, Mayhew Center never finished cleaning up the property and ultimately defaulted on its mortgage. In 2017, G.P. Vincent bought the Mayhew Center property in a foreclosure sale. In connection with the purchase, G.P. Vincent entered into an agreement with the Regional Water Quality Control Board whereby it assumed the obligation to clean up the property it was purchasing. Now, in this lawsuit, G.P. Vincent has sued a number of defendants under CERCLA—including the Beards, Etch-Tek, and Mayhew Center itself—contending that they are responsible for the cleanup cost.

The Beards and Etch-Tek have moved to dismiss the claims against them on res judicata grounds. "Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n.3 (9th Cir. 2002) (citing *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). All three elements are met.

(1) Final Judgment on the Merits. A voluntary dismissal with prejudice is a final judgement on the merits. *See, e.g.*, *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995); *Ellis v. Gelson's Markets*, 1 F.3d 1246 (9th Cir. 1993). Thus, when the court in the Mayhew Center case granted the parties' stipulated dismissal with prejudice in July 2011 following the settlement

agreement, it entered a final judgment on the merits.[1]

(2) Privity. There is privity between Mayhew Center (the prior owner of the property) and G.P. Vincent (the current owner). When a new party acquires property, it becomes the prior owner's successor in interest. *See In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) ("[A] non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party."); *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' . . . . Qualifying relationships include, but are not limited to, preceding and succeeding owners of property . . . ."). G.P. Vincent has provided no authority suggesting that acquiring the property through foreclosure (as opposed to, say, traditional purchase or inheritance) creates an exception to this rule. But more importantly, even if there were an exception to the "successor in interest" rule for parties that acquire property in foreclosure, there would be privity between G.P. Vincent and Mayhew Center as it relates to the prior lawsuit. The interests of G.P. Vincent and Mayhew Center—as successive owners obligated to clean up the same contaminated property and concerned with making sure that anyone responsible for the contamination contributes to the cleanup—are easily close enough to establish identity of the parties, which "is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *U.S. v. Liquidators of European Federal Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011); *cf. Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1082 (9th Cir. 2003).

There is also privity among Norma Beard, her husband Kenneth Beard, and Etch-Tek. The Mayhew Center suit only named Norma Beard while G.P. Vincent sues all three of those

---

[1] In their motions, the Beards and Etch-Tek initially failed to mention that the Mayhew Center lawsuit resulted in a stipulated dismissal with prejudice, instead arguing that the stipulated injunction in the Walnut Creek Manor case was a final judgment on the merits that barred the claims against them in this case. The Beards and Etch-Tek were not parties to the Walnut Creek Manor case. The injunction merely mentioned the settlement agreement involving them; it did not purport to impose any obligation on them. Thus, the injunction in the Walnut Creek Manor case was almost certainly not a final judgment on the merits as to the Beards and Etch-Tek. But the dismissal with prejudice that followed in the Mayhew Center case was.

parties. But Kenneth Beard and Etch-Tek are "so identified in interest with [Norma Beard] that [she] represent[ed] precisely the same right in respect to the subject matter involved." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997); *see Subramanan v. St. Paul Fire & Marine Insurance*, 494 F. App'x 817, 820 (9th Cir. 2012).

(3) Identity of Claims. There also exists an identity of claims between the two lawsuits. The relevant question is whether G.P. Vincent has asserted a cause of action different from those raised in Mayhew Center's suit. To determine whether successive lawsuits involve a single cause of action, courts apply several overlapping criteria: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (internal citation omitted); *see Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1026 (9th Cir. 2019).

Application of these criteria shows that G.P. Vincent's current lawsuit asserts the same cause of action as Mayhew Center's prior suit. The rights and interests established by the prior judgment would be destroyed if G.P. Vincent were now successful—the prior judgment freed the Beards and Etch-Tek from any further obligation to clean up the property, while this lawsuit seeks a second recovery against them for the exact same conduct. Substantially the same evidence would be involved in both cases because the question presented is identical—whether and to what degree the Beards and Etch-Tek are responsible for the contamination based on their actions in the 1970s and 1980s. And the two suits involve the same right—the right "to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination." *Arconic, Inc. v. APC Investment Co.*, 969 F.3d 945, 951 (9th Cir. 2020) (internal quotations omitted).

For similar reasons, both lawsuits arise out of the same nucleus of facts. Both lawsuits claim that the Beards and Etch-Tek are responsible for discharging hazardous substances into the

4

property's soil during the same time period and demand that they pay their fair share of the cost of cleaning it up. Mayhew Center was obligated to clean up the property as directed by the Regional Water Quality Control Board, and it sought to recover the cost of that cleanup from those who contaminated it. Now, G.P. Vincent is obligated to clean up the property as directed by that same entity, and it seeks to recover the cost of that cleanup from those who contaminated it.[2]

G.P. Vincent argues that there cannot be an identity of claims because its lawsuit against the Beards and Etch-Tek is brought under a different section of CERCLA than the suit brought by Mayhew Center in 2010. The argument goes like this: (i) a party can either sue for "cost recovery" under section 107 of CERCLA or for "contribution" under section 113 of CERCLA, but not both; (ii) G.P. Vincent has sued the Beards and Etch-Tek under section 107 for cost recovery; (iii) although Mayhew Center's action was nominally brought under both sections 107 and 113, it must be understood as a section 113 suit because it was seeking contribution based on the Walnut Creek Manor judgment; and therefore (iv) there is no identity of claims, because G.P. Vincent is suing under a section of CERCLA that Mayhew Center could not have legitimately invoked back in 2010.

It appears correct that the prior Mayhew Center lawsuit must be understood as a section 113 action. And the Court will assume, for argument's sake only, that G.P. Vincent's lawsuit is properly brought under section 107 (as opposed to section 113). But that does not matter for res judicata purposes. CERCLA's procedural idiosyncrasies about which type of plaintiff can sue under which section of the statute cannot interfere with a conclusion that both lawsuits arise out of the same transaction, when both lawsuits seek judgments for exactly the same conduct and

---

[2] To be clear, in the original Walnut Creek Manor lawsuit against Mayhew Center, the judgment did not merely require Mayhew Center to clean up Walnut Creek Manor's property. It also required Mayhew Center to clean up its own property, as directed by the Regional Water Quality Control Board. Mayhew Center's suit against Beard was for contribution for the cleanup of both properties.

resulting harm. It is true that, "[i]n *most* cases, the inquiry into the same transactional nucleus of facts is essentially the same as whether the claim could have been brought in the first action." *Turtle Island Restoration Network v. U.S. Department of State*, 673 F.3d 914, 918 (9th Cir. 2012) (emphasis added, internal quotation omitted). But this is not most cases. The fact that each lawsuit invoked a different procedural CERCLA vehicle for accomplishing the same thing—and the fact that the prior lawsuit could not have invoked the same procedural vehicle as the current one—does not mean that the current lawsuit stems from a different nucleus of facts. *See Alaska Sport Fishing Association v. Exxon Corp.*, 34 F.3d 769, 774 (9th Cir. 1994) (finding an identity of claims when parties in a previous lawsuit "already recovered for the very same damages plaintiffs now seek here"); *Media Rights*, 922 F.3d 1014, 1027 (9th Cir. 2019) ("With respect to the common-nucleus criterion . . . [w]e are most concerned with the facts or events from which the alleged harms arose."); *see also Arconic, Inc.*, 969 F.3d at 951 (describing § 107 and § 113 as "two mechanisms for private parties to recoup their cleanup costs").[3]

Accordingly, the claims against the Beards and Etch-Tek are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: February 19, 2021

VINCE CHHABRIA
United States District Judge

---

[3] G.P. Vincent has also brought a claim against the Beards and Etch-Tek under the California Land Reuse and Revitalization Act, but as all parties seem to agree, that claim is largely duplicative of the CERCLA claim and thus the same res judicata analysis applies.